IN UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CYRIL MARTIN, et al.,<br><br><br>Plaintiffs,<br><br>vs.<br><br>MARRIOTT INTERNATIONAL, INC., et al.,<br><br>Defendants. | CIVIL NO. 18-00494 JAO-RT<br><br>ORDER GRANTING (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ENTRY OF ORDER AND FINAL JUDGMENT; (2) DEFENDANT'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (3) PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS |

**ORDER GRANTING (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ENTRY OF ORDER AND FINAL JUDGMENT; (2) DEFENDANT'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (3) PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

Before the Court are (1) Plaintiffs'[1] Motion for Final Approval of Class

Settlement and Entry of Order and Final Judgment, ECF No. 172; (2) Defendants'[2]

---

[1]  Plaintiffs, who are also the class representatives, are:  Cyril Martin, Jennifer Martin, Russell Baird, Cyndy Baird, Michael Archibald, Shelley Archibald, Steve Olson, Julie Olson, Alicia Hazelton, and Robert Hazelton (collectively, "Plaintiffs" or "Class Representatives").

Motion for Final Approval of Class Action Settlement, ECF No. 173; and (3) Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Class Representative Service Awards, ECF No. 169.  For the reasons set forth below, the Court GRANTS the motions.

## BACKGROUND

This action arises out of the disruptions caused by the hotel workers' strike at Defendants' properties where Plaintiffs stayed as guests in late 2018.  ECF No. 172-1 at 13.  Plaintiffs commenced this lawsuit in state court on November 8, 2018, alleging that hotel services and amenities were limited or eliminated due to the strike.  *Id.* at 13–14.  Plaintiffs asserted Hawaiʻi Revised Statutes ("HRS") Chapter 480 unfair and deceptive acts and practices and unjust enrichment claims. *Id.* at 14.

On December 20, 2018, Defendants removed the action.  ECF No. 1.

After engaging in mediation, the parties reached a settlement in October 2019 and provided the Court with the key terms.  ECF Nos. 153, 154.  On August 20, 2020, the parties entered into a Settlement Agreement and Release ("Settlement Agreement").  ECF No. 172-5.

---

[2]  Defendants are Marriott International, Inc. and Kyo-ya Hotels & Resorts (collectively, "Defendants").

On January 14, 2021, Plaintiffs sought class certification for settlement purposes and preliminary approval of a class action settlement, notice, and dissemination plan.  ECF No. 157.

On February 19, 2021, the Court issued an Order:  (1) Preliminarily Approving Class Action Settlement Agreement, (2) Approving Form of Notice, (3) Establishing Objection Deadline, (4) Directing Dissemination of Notice, and (5) Setting Final Fairness Hearing Re: Settlement between Plaintiffs and Defendants ("Preliminary Approval Order").  ECF No. 168.  Pursuant to the Preliminary Approval Order, the parties filed the pending motions.  ECF Nos. 169, 172, 173.

On October 1, 2021, the Court held a final fairness hearing, at which it heard the pending motions.  ECF No. 180.

## DISCUSSION

Plaintiffs ask the Court to (1) approve the settlement; (2) enjoin further prosecution of the settled claims; (3) dismiss the case with prejudice and release the claims as set forth in the proposed Order and Final Judgment; and (4) award $547,630.64 in attorneys' fees plus general excise tax, $42,290.09 in costs and expenses, and $2,500.00 per Class Representative as a service award.  ECF Nos. 169, 172.  Defendants request the same relief regarding the settlement and approval, and they take no position on the fee motion.  ECF Nos. 173, 175.

3

After carefully considering the motions, the Settlement Agreement, and the applicable law, the Court GRANTS the motions and approves the settlement. Neither counsel nor the Court have received written objections to the motions or the settlement, and no class members presented objections at the hearing.

## A.    Class Certification

In the Preliminary Approval Order, the Court granted conditional class certification for settlement purposes, finding that Federal Rule of Civil Procedure ("FRCP") 23(a)'s requirements were satisfied.  ECF No. 168 at 4–5.  The Court also determined that Plaintiffs established predominance pursuant to FRCP 23(b). *Id.* at 5–6.  The Court again finds that the Settlement Class, as defined in Section 1.33 of the Settlement Agreement, *see* ECF No. 172-5 at 6, satisfies the requirements set forth in FRCP 23(a) and (b), and therefore certifies the class.

The Court appointed (1) Cyril Martin, Jennifer Martin, Michael Archibald, and Shelley Archibald as class representatives of Subclass 1, and Russell Baird, Cyndy Baird, Steve Olson, Julie Olson, Robert Hazelton, and Alicia Hazelton as class representatives of Subclass 2; and (2) Bickerton Law Group, LLLP, as class counsel.  ECF No. 168 at 6.

## B.    Notice

The Court previously approved the Notice and Notice Plan.  *Id.* at 6–7.  Rust

Consulting, the Settlement Administrator, implemented the Notice Plan and provided notice to class members through first-class mail; email; publication in USA Today, The Globe & Mail, and Journal de Montreal; and a digital campaign using online ads. ECF No. 177-1 ¶¶ 4–17. Rust Consulting also mailed notices pursuant to the Class Action Fairness Act ("CAFA") to the Attorney General of the United States and the Attorneys General of all 50 States, the District of Columbia, and U.S. Territories. *Id.* ¶ 32.

## C.   Fairness, Reasonableness, and Adequacy of Settlement

"[S]ettlements that occur before class certification are subject to 'a high procedural standard.'" *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). District courts must act as fiduciaries, "protecting the interests of absent class members by scrutinizing the settlement's fairness in light of well-established factors." *Id.* (citation omitted). This requires district courts to show comprehensive exploration of all factors and offer "reasoned response[s] to all non-frivolous objections." *Id.* (internal quotation marks and citation omitted).

FRCP 23(e)(2) authorizes district courts to approve class settlements that are fair, reasonable and adequate after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

> **(i)** the costs, risks, and delay of trial and appeal;

> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

> **(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Courts also evaluate the following factors to determine whether FRCP 23(e)(2) is satisfied:

> "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Kim*, 8 F.4th at 1178 (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011)).  Where, as here, the settlement was reached before class certification, the Court must "consider 'the terms of any proposed award of attorney's fees' and scrutinize the settlement for evidence of collusion or conflicts

6

of interest before approving the settlement as fair." *Id.* (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1024–25 (9th Cir. 2021)).

Here, the Court finds that the proposed settlement, taken as a whole, is fundamentally fair, adequate, and reasonable. The Court reaches this conclusion after comprehensively exploring and considering all of the applicable factors identified above.

### 1. Adequacy of Class Counsel and Class Representatives; Settlement Negotiation; Treatment of Class Members Relative to One Another

The Court finds that Class Representatives and class counsel adequately represented the class; the settlement was negotiated at arm's length through mediation with Keith Hunter; and class members are treated equitably relative to one another under the settlement.[3] *See* Fed. R. Civ. P. 23(e)(2)(A), (B), (D).

### 2. Adequacy of Relief

The Court similarly finds that the relief accorded to the class is adequate under FRCP 23(e)(2)(C) and the factors listed above, *see Kim*, 8 F.4th at 1178 (citation omitted).

---

[3] Notwithstanding the modest service awards to be received by Class Representatives, for the reasons discussed below, they were treated equitably relative to the other class members for all other purposes. ECF No. 172-5 at 49.

### a.    Risks, Costs, Length of Further Litigation, Strength of Plaintiffs' Case, Stage of Proceedings

Because victory in litigation is never guaranteed for either side, regardless of the strength of a plaintiff's case, resolution by settlement is favorable.  Plaintiffs' assessment of their case accurately recognizes the strength of their facts and uncertainty regarding the legal success of their claims due to developing law and the arbitration and contractual defenses presented by Defendants.  Pending at the time the parties settled this case were Defendants' motion to compel arbitration and motion for summary judgment, and Plaintiffs' motion for class certification.  It is unclear that Plaintiffs could have successfully defended against Defendants' motions and eventually proceeded to trial, or that they could have obtained and/or maintained class certification.  Even if they could, trial and appeal would have delayed final resolution, and they would have incurred substantial costs in the process.  Therefore, the benefits of guaranteed recovery at the time of settlement outweighed the risk of further litigation.  And because the parties had already conducted extensive discovery, including depositions, they had sufficient facts to make an informed decision.

### b.    Settlement Amount

The settlement amount — $1,825,435.48 (original fund) and $350,000.00 (additional funding) — is reasonable under the circumstances.  ECF No. 172-5 at 13–14.  Each class member will recover an average of $35.00 per night (nearly

$22.00 per night after deduction of fees and administrative expenses) for each night they stayed at one of the subject properties.  ECF No. 172-1 at 31; ECF No. 172-5 at 14.

### c.      Experience and Views of Counsel

Counsel for the parties are seasoned and Plaintiffs' counsel have extensive experience with class actions.  ECF No. 172-1 at 31; ECF No. 169-2 ¶ 26.  As such, Plaintiffs' counsel could reasonably and fairly evaluate the settlement, which they deem a positive outcome.

### d.      Class Members' Reaction

The absence of objections to the proposed settlement raises a strong presumption that the terms of the proposed settlement are favorable to the class members and militates in favor of approving the settlement.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted).  The Preliminary Approval Order outlined the requirements for class members to file written objections and to appear at the final fairness hearing.  ECF No. 168 at 10–11 (¶¶ 14, 16).  This information was also included in the Notice sent to the class members.  ECF No. 177-2 at 4, 9–11.  No objections or requests for exclusion were submitted by the deadline, or anytime thereafter.

### e.      Effectiveness of Distributing Relief to the Class

The distribution of relief to the class is effective.  Class members were only required to submit a claim form, which Rust Consulting reviewed through a multi-level process.  The first matching process validated two factors (*e.g.*, full name, mailing address, phone number, email, nights stayed) with Defendants' records. ECF No. 177-1 ¶ 23.  Using this two-factor matching process, Rust Consulting validated approximately 2,300 claims (of 13,792 claim forms received) as of September 11, 2021.  *Id.* ¶¶ 22–23.  To ensure that no valid claims were overlooked, Rust Consulting then employed a single-factor matching process for claims that were not already matched to Defendants' records, which resulted in 73 additional claims approved for payment.  *Id.* ¶ 24.  Rust Consulting made a final pass, checking whether there were two records from Defendants for the same person that matched a submitted claim form.  *Id.* ¶ 25.  Seventeen claims were approved through this process.  *Id.*  In total, an estimated $421,000 will be paid based on Rust Consulting's validation of approximately 2,413 claims for approximately 10,000 nights.  *Id.* ¶ 26; ECF No. 178 at 2–3 (identifying 13 additional untimely claims with a value of $2,332.00 that would have previously been validated and set for payment if timely submitted, and noting that that the parties have agreed to pay these claims).

### f.    Attorneys' Fees

The proposed attorneys' fees are reasonable, as is the timing of payment.[4]

*See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  In making this determination, the Court

scrutinizes the Settlement Agreement for evidence of collusion.  Three signs in

particular may indicate collusion:  "(1) a handsome fee award despite little to no

monetary distribution for the class, (2) a 'clear sailing' provision under which

defendant agrees not to object to the attorneys' fees sought, and (3) an agreement

that fees not awarded will revert to the defendant, not the class fund."  *Kim*, 8 F.4th

at 1180 (citation omitted); *see also Briseño*, 998 F.3d at 1023 (identifying these

factors as a sign that class counsel have infected negotiations by pursuing their

own self-interest).  The presence of these red flags "is not a death knell — but

when they exist, 'they require[] the district court to examine them, . . . develop the

record to support its final approval decision,' and thereby 'assure itself that the fees

awarded in the agreement were not unreasonably high.'"  *Kim*, 8 F.4th at 1180

(alterations in original) (citation omitted).

---

[4] Under the Settlement Agreement, Rust Consulting will remit a check to class counsel for the Court-approved attorneys' fees and costs within 30 days of the "Effective Date," which, if no appeal is filed, is 45 days after the Court issues its order/enters judgment, and if an appeal is filed, is the date when all appellate rights expire.  ECF No. 172-5 at 3, 34.

### i. No Collusion

The Settlement Agreement contains a "clear sailing" provision and Defendants have complied by not opposing the fee motion.  ECF No. 172-5 at 33–34.  Because "clear sailing" agreements regarding "attorneys' fees are important warning signs of collusion," *Kim*, 8 F.4th at 1180 (internal quotation marks omitted) (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019)), district courts "must 'peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class,' even when the settlement has been negotiated 'with a neutral mediator before turning to fees.'" *Id.* (quoting *Bluetooth*, 654 F.3d at 948); *Briseño*, 998 F.3d at 1027 ("When faced with a clear sailing provision, courts thus have a 'heightened duty to peer into the provision and scrutinize closely the relationship between attorney's fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested.'" (citation omitted)).  In spite of the "clear sailing" provision here, there is no evidence of collusion.

For one, unawarded fees will not revert to Defendants.  Because they are paid from the settlement fund, any funds remaining after claims, fees, and costs are reconciled will be donated to the Visitor Aloha Society of Hawaii.  ECF No. 172-5 at 15 (designating the Visitor Aloha Society of Hawaii as the non-profit organization to receive any remaining balance of the settlement fund).  As an

organization that assists Hawaii's visitors with various services, it is the "next best" class of beneficiaries. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) ("The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries" and these "distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity" (citations omitted)).  And Defendants have already fully funded the settlement fund account with $1,825,435.48.  ECF No. 177-1 ¶ 31.

The fact that Defendants will not receive any balance of any remaining settlement fund minimizes concern that class counsel's fee request — which exceeds the actual anticipated payout to class members with approved claims —  is a sign of collusion.  When assessing proportionality, district courts must consider "the amount of anticipated monetary relief based on the timely submitted claims already made." *Kim*, 8 F.4th at 1181 (citation omitted).  Even though class counsel's $547,630.64 fee request is greater than the approximately $421,000.00 in claims approved by Rust Consulting,[5] a disproportionate cash allocation between

---

[5]  This is in stark contrast to cases where the fees were grossly disproportionate to the limited claims paid by the defendants. *See*, *e.g.*, *Kim*, 8 F.4th at 1181 (identifying as a basis for reversal the district court's assumption, in approving a $1.2 million fee award, that the defendant would pay a 100% claims rate, or

(continued . . .)

attorneys' fees and class members "is not per se problematic." *Roes*, 944 F.3d at 1051.  After closely reviewing the requested fees, the Court finds the request reasonable for the reasons that follow.

### ii.     Reasonableness of Fee Award

The $547,630.64 fee request represents 30% of the original settlement fund. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, district courts have "an independent obligation to ensure that [any attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Briseño*, 998 F.3d at 1022 (alteration in original) (internal quotation marks and citations omitted).  A court "must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper" regardless of the source from which the funds are paid. *Id.* at 1023 (internal quotation marks, citation, and footnote omitted).

The Ninth Circuit authorizes "two methods of calculating attorneys' fee awards in class actions:  (1) the 'lodestar' method and (2) the 'percentage-of-

---

(. . . continued)
$6 million, when the timely submitted claims were approximately $45,000.00); *Briseño*, 998 F.3d at 1026 ("The lion's share of the money — almost $7 million — will end up in the pockets of attorneys, while the class receives relative scraps, less than a million dollars.  So little goes to the class members in a claims-made settlement, such as this one, because the redemption rate is notoriously low, especially when it involves small-ticket items.").

recovery' method." *Kim*, 8 F.4th at 1180 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc)).  The lodestar method multiplies the number of hours reasonably expended in the litigation by a reasonable hourly rate to compute a reasonable fee award.  *See id.* (citation omitted).  This award may be adjusted "by an appropriate positive or negative multiplier reflecting . . . the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 1180–81 (alteration in original) (internal quotation marks and citation omitted).  The lodestar method is particularly appropriate in class actions primarily involving injunctive relief.  *See id.* at 1181 (citation omitted).

Alternatively, "[t]he percentage-of-recovery approach may be used 'where the defendants provide monetary compensation to the plaintiffs' and class benefit is easy to quantify."  *Id.* (citation omitted).  District courts award class counsel a reasonable fee based on a percentage of the settlement fund under this method.  *See id.* (citation omitted).

Plaintiffs argue that the requested 30% fee is reasonable under the percentage-of-recovery methodology, and they emphasize that the fee request is approximately 25% of the *total* available funds ($2,175,435.48, which is the sum of the original settlement funds and additional funds).  ECF No. 169-1 at 23–24. The Ninth Circuit "has established 25% of the common fund as a benchmark

award for attorney fees," *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) (internal quotation marks and citation omitted), and 20% to 30% is the usual range. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  This percentage may be increased or decreased, as appropriate.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  If an adjustment is warranted, the court must provide a reasonable explanation of both "why the benchmark is unreasonable under the circumstances" and "how it arrives at the figure ultimately awarded."  *Id.* at 272–73 (citation omitted).  District courts may consider this non-exhaustive list of factors in determining the percentage ultimately awarded:

> (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis.

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (citations omitted).

The Court finds that the aforementioned factors weigh in favor of granting the requested fee award, with an adjustment of the benchmark to 30% of the original settlement fund.  Plaintiffs' counsel obtained a favorable result that benefits the class members; if the case were to proceed on its merits, there is a risk

that Plaintiffs and the class would recover nothing; class counsel assumed representation of Plaintiffs on a contingency-fee basis and advanced the costs of litigation, despite the risk that they would receive no compensation; and class counsel expended a considerable amount of time on this litigation, foregoing other work for a period of time.  Notably, the Court has received no objections to the settlement or the requested fees.

To confirm the reasonableness of a fee award, "a court may cross-check its percentage-of-recovery figure against a lodestar calculation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015) (citation omitted); *see Bluetooth*, 654 F.3d at 944 (encouraging "courts to guard against an unreasonable result by cross-checking their calculations against a second method" (citations omitted)).  The Court starts by determining "reasonable hourly rate[s] to use for attorneys and paralegals in computing the lodestar amount," which are established by the "prevailing market rates in the relevant community," *i.e.*, the market rates of attorneys and paralegals of comparable "experience, skill, and reputation" in "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013) (some internal quotation marks and citations omitted).  The Court must also ascertain the reasonable number of hours — the hours that could have reasonably been billed to a client — "for which the prevailing party should be compensated." *Id.* at 1202 (citation omitted).

Plaintiffs present a lodestar of $253,285.00 for comparison, which reflects their counsel's standard hourly rates multiplied by the corresponding hours expended in this litigation (including the estimated hours to complete final approval of the settlement and distribution).  ECF No. 169-1 at 30; ECF No. 169-9. A 2.16 multiplier results when measured against Plaintiffs' $547,630.64 percentage-of-recovery fee request.  Multipliers of one to four are often awarded in common fund cases.  *See Vizcaino*, 290 F.3d at 1051 n.6 (citations omitted).  The Court has reviewed the lodestar and finds that the multiplier is reasonable given the duration of the litigation and the risks counsel assumed in accepting this case on a contingency basis.[6]

### g.    Costs

Plaintiffs request $42,290.09 in costs for expert witness fees, travel expenses, court filing fees, copying costs, deposition expenses, mediation fees, and courier expenses.  ECF No. 169-1 at 30–32; ECF No. 169-5.  Plaintiffs have demonstrated that these costs were reasonably and necessarily incurred in the prosecution of this action.  As a result, the Court awards the requested costs.

---

[6] Were this a traditional fees motion, the Court would more carefully scrutinize the nature of the tasks completed and make any necessary deductions for non-compensable time.  However, because the lodestar is utilized only as a cross-check, the Court finds it unnecessary to engage in such a detailed level of review.

### h.    Incentive Payment

Plaintiffs ask that they each be awarded a $2,500.00 incentive payment, which is authorized by the Settlement Agreement.  ECF No. 169-1 at 32–34; ECF No. 172-5 at 14.  Named plaintiffs are eligible for reasonable incentive payments. *See Staton*, 327 F.3d at 977.  To evaluate the reasonableness of the payment, courts should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citation omitted).  These discretionary awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

In this case, the requested $2,500.00 incentive payment per class representative is reasonable.  According to class counsel, Class Representatives participated extensively in this lawsuit and devoted substantial time by responding to discovery requests, sitting for their depositions, traveling to Honolulu, participating in settlement negotiations, reviewing and approving the proposed settlement, and communicating with class counsel.  ECF No. 169-2 ¶ 33.  The

Court therefore finds that the requested incentive awards are appropriate and shall be awarded to each class representative.

In sum there is no evidence or any suggestion that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties. Accordingly, the Court approves the settlement because it is fair, adequate, and reasonable for the reasons stated herein.

## D.   Additional Relief

In addition to the foregoing, Plaintiffs request enforcement of the Settlement Agreement by permanently enjoining class members from asserting released claims.  ECF No. 172-1 at 33; ECF No. 173-1 at 6–10.  The Court grants this relief because it is necessary to protect and effectuate the Settlement Agreement and the final order and judgment.  *See Keith v. Volpe*, 118 F.3d 1386, 1390 (9th Cir. 1997). Plaintiffs and each and every class member are barred and permanently enjoined from (1) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit in any jurisdiction based on or relating to the claims and causes of action within the scope of the release in the Settlement Agreement (Section 10.1), and (2) organizing potential class members who have not been excluded from the class into a separate class for the purposes of pursuing as a purported class action any lawsuit — including amendment of pleadings or

class certification in pending actions — based on or relating to the claims and

causes of action within the scope of the Settlement Agreement.

## CONCLUSION

In accordance with the foregoing, the Court GRANTS Plaintiffs' Motion for

Final Approval of Class Settlement and Entry of Order and Final Judgment, ECF

No. 172; GRANTS Defendants' Motion for Final Approval of Class Action

Settlement, ECF No. 173; and GRANTS Plaintiffs' Motion for Award of

Attorneys' Fees Reimbursement of Costs and Expenses, and Class Representative

Service Awards, ECF No. 169, and ORDERS as follows:

(1)   The requirements of FRCP 23(e) have been satisfied and the Settlement Agreement is fair, reasonable, and adequate.

(2)   The Court certifies the Settlement Class, as described in Section 1.33 of the Settlement Agreement.

(3)   James J. Bickerton and Bridget G. Morgan-Bickerton of Bickerton Law Group LLLP, are finally appointed as class counsel for purposes of the settlement.

(4)   The parties and counsel are directed to implement the Settlement Agreement according to its terms and provisions.

(5)   The Court approves $547,630.64 in attorneys' fees plus general excise tax and $42,290.09 in costs.  These amounts shall be paid from the settlement fund.

(6)   The Settlement Agreement, this Order, and the final judgment will be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings encompassed by Plaintiffs'

releases and/or that are based, in whole or in part, on the released claims.

(7)     This case (including all individual claims and class claims presented) is DISMISSED on the merits WITH PREJUDICE with the parties to bear their own attorneys' fees and costs, except as provided herein.

(8)     Without affecting the finality of the final judgment for purposes of appeal, the Court retains jurisdiction regarding all matters relating to the administration, consummation, and enforcement of the Settlement Agreement and for any other necessary purpose relating to the settlement.

(9)     Plaintiffs and all class members are barred and permanently enjoined from filing lawsuits or participating in actions based on or relating to the claims falling within the scope of the Settlement Agreement.

(10)    The Court directs the Clerk's Office to enter final judgment and close the case.

IT IS SO ORDERED.

DATED:      Honolulu, Hawaiʻi, October 19, 2021.

Jill A. Otake
United States District Judge

Civil No. 18-00494 JAO-RT, *Martin, et al. v. Marriott, et al.*;  ORDER GRANTING (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ENTRY OF ORDER AND FINAL JUDGMENT; (2) DEFENDANT'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (3) PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS